UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BYRON E. ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-00738-GCS |
| | ) |
| JENNIFER BASLER & ABBY BENNETT, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court is Defendant Abby Bennett's Motion for Summary Judgment on the issue of exhaustion of administrative remedies. (Doc. 37). Defendant Bennett filed the Motion and accompanying Memorandum of Support on January 2, 2024. (Doc. 37, 38). Plaintiff filed three separate responses to Defendant's Motion for Summary Judgment. The first response was filed on January 8, 2024. (Doc. 41). Plaintiff's second and third responses were filed on January 29, 2024, and January 30, 2024, respectively. (Doc. 44, 45). A hearing was held on the motion on August 19, 2024, wherein Plaintiff testified. (Doc. 73). For the reasons delineated below, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. 37).

### PROCEDURAL BACKGROUND

Plaintiff Byron E. Adams is an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Dixon Correctional Center. He brings this civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while

he was at Big Muddy Correctional Center. (Doc. 1, p. 1). He claims that Defendants failed to give him prescribed medications and to change his leg dressing as directed by his doctor. Plaintiff claims that this conduct was undertaken in retaliation for Plaintiff having filed grievances against the Defendants. (Doc. 1, p. 10-14).

Plaintiff filed his lawsuit on February 28, 2023. (Doc. 1). On August 11, 2023, the Court completed its preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. Plaintiff was permitted to proceed against Defendants on the following counts:

**Count 1:** Eighth Amendment deliberate indifference claim against Basler for failing to provide Plaintiff with his prescribed medications on December 31, 2022.

**Count 2:** Eighth Amendment deliberate indifference claim against Bennett for failing to provide Plaintiff with his prescribed leg dressing changes on January 9, 2023, and his medications on February 23, 2023.

**Count 3:** First Amendment retaliation claim against Basler and Bennett for denying Plaintiff's medications and against Bennett for denying Plaintiff's leg dressing changes because Plaintiff filed grievances and/or lodged complaints against them.

(Doc. 19, p. 3). On April 5, 2024, Defendant Basler moved to withdraw the affirmative defense of failure to exhaust administrative remedies. (Doc. 54). On April 9, 2024, the Court granted Defendant Basler's Motion. (Doc. 57). As such, only Defendant Bennett is pursuing the affirmative defense of failure to exhaust administrative remedies.

### FACTUAL BACKGROUND

The following grievances have been provided to the Court by Plaintiff and Defendant Bennett for review.

Grievance No. 3-1-23, dated December 31, 2022, complained that on that date Co-

Defendant Jennifer Basler failed to give Plaintiff his proscribed medication during morning rounds and subsequently refused to provide him that medication when she wrapped his leg later in the healthcare unit. (Doc. 38, Exh. 1, p. 8-9). The grievance was deemed an emergency on January 9, 2023. *Id*. at p. 8. On January 23, 2023, the Grievance Officer denied the grievance, stating that "all departmental policy and procedures related to the matter" had been followed and that "no evidence of wrongdoing can be substantiated." *Id.* at p. 7. On January 24, 2023, the Chief Administrative Officer concurred with the Grievance Officer. *Id.* The Administrative Review Board ("ARB") received Grievance No. 3-1-23 on January 30, 2023. *Id.* at p. 6. The Grievance was denied on February 27, 2023. *Id.*

Grievance No. 84-1-23, dated January 6, 2023, complained generally that the Licensed Practical Nurses at Big Muddy Correctional Center had failed to wrap or put a compression sock on Plaintiff's leg as proscribed by Dr. Larson.[1] (Doc. 38, Exh. 2, p. 1-2). Additionally, the grievance notes that on January 6, 2023, that LPN Jones and LPN Sandy did not wrap Plaintiff's leg. *Id*. The grievance also recounted how Plaintiff had filed a previous grievance about Defendant Basler for failing to provide him with his medication. *Id*. at p. 2. On January 20, 2023, the Counselor replied to Plaintiff's grievance indicating that "there was no documentation of treatment noted in [the] medical file" and that "Nursing Staff have been directed to follow MD orders and document when treatment is completed." *Id.* at p. 3. On January 25, 2023, the Grievance Officer

---

[1]   "Dr. Larson ordered that my left leg and compression sock be put on every day, but his medical orders are being ignored by the LPN." (Doc. 38, Exh. 2, p. 2).

recommended that the grievance be deemed moot, as the issue was being addressed by healthcare. *Id.* at p. 4. On January 30, 2023, the Chief Administrative Officer concurred with the Grievance Officer and deemed the grievance moot. *Id.*

Grievance No. 80-1-23, dated January 9, 2023, complained that on that date Defendant Bennett failed to wrap or put a compression sock on Plaintiff's leg. (Doc. 38, Exh. 1, p. 3-4). The grievance was deemed an emergency on January 11, 2023. *Id.* at p. 3. On January 24, 2023, the Grievance Officer recommended that Plaintiff's grievance be denied as, "all departmental policy and procedures related to this matter ha[d] been followed." *Id.* at p. 2. The Chief Administrative Officer concurred with the Grievance Officer's determination and denied the Grievance on January 24, 2023. *Id.* The ARB received Plaintiff's grievance on February 6, 2023, and denied the grievance on March 16, 2023, noting that the "warden is to reiterate staff's compliance with A.D. 04.03.110." *Id.* at p. 1.

Grievance No. 160-2-23, dated February 24, 2023, complained that Defendant Bennett failed to provide Plaintiff with his medication that morning. (Doc. 38, Exh. 2, p. 18-19). The grievance was deemed an emergency on February 27, 2023. *Id.* at p. 18. On March 6, 2023, the Grievance Officer recommended that Plaintiff's grievance be denied, as no wrongdoing could be substantiated. *Id.* at p. 17. The Chief Administrative Officer concurred with the Grievance Officer and denied the Grievance on March 10, 2023. *Id.*

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for

summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, in determining the outcome on a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but instead is to determine whether a genuine issue of material fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies "are not required to be decided by a jury but are to be determined by the judge." 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, the Court must evaluate whether a prisoner has exhausted his or her administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines that a prisoner did not exhaust administrative remedies, the plaintiff is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent.[2] *Id*. at 742. Alternatively, if the Court determines that the failure to exhaust was the prisoner's fault, the case is over. *Id.*

---

[2] *Pavey* provides that an "innocent" failure to exhaust includes situations where prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. 544 F.3d at 742. Further, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed thwarted, and the inmate will be allowed to proceed with the lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (indicating that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). This comports with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). Additionally, it affords prison administrations an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

When exhausting administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo*, 286 F.3d at 1023. As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or otherwise procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Nor may a prisoner file a lawsuit while the prisoner is simultaneously proceeding through the required grievance process. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a

prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a Counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). In the grievance, the prisoner must provide: "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint."[3] 20 ILL. ADMIN. CODE § 504.810(a). Should the prisoner not be satisfied with the Counselor's response, the prisoner can then submit a formal grievance to the prison's Grievance Officer. *Id.* at (a)-(b). The Grievance Officer must review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of receipt of the grievance, when reasonably feasible under the circumstances, the Grievance Officer must report his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO shall review the findings and recommendations from the Grievance Officer and advise the inmate of his or her decision in writing. *Id.* If the prisoner is not satisfied with the CAO's decision, the prisoner can then formally appeal to the Director through the ARB within 30 days of the CAO's

---

[3] This does not preclude an inmate from filing a grievance when the names of individuals are not known, but the inmate must include as much descriptive information about the individual as possible. *See* 20 ILL. ADMIN. CODE § 504.810(a).

decision. *See* ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the Grievance Officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)–(e).

A separate procedure exists for emergency grievances. Inmates may file emergency grievances directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO will determine if there is "a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate that warrants the grievance being handled on an emergency basis. *Id.* If the CAO classifies the grievance as an emergency grievance, the CAO shall "expedite the process of the grievance and respond to the offender indicating what action shall be or has been taken." *See* 20 ILL. ADMIN. CODE § 504.840(b). The inmate will also be informed by the CAO if it is determined that the grievance is non-emergent. *See* 20 ILL. ADMIN. CODE § 504.840(c). In such a case, notification will be made in writing that the inmate should "resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.* When an inmate appeals a grievance that has been deemed emergent by the CAO, the ARB "shall expedite the processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

Lastly, there are certain circumstances where a prisoner may exhaust his or her administrative remedies by filing a grievance directly with the ARB. *See* 20 ILL. ADMIN. CODE § 504.870. Those circumstances include grievances addressing: (1) placement in protective custody; (2) involuntary administration of psychotropic medication; (3) decisions regarding disciplinary proceedings that took place at an institution other than

where the inmate currently resides; and (4) all other issues, with the exception of personal property issues, that occurred at a previous institution." *Id.* The ARB "shall review and process . . . [such] grievance[s] in accordance with Section 504.850." *Id.*

## DISCUSSION

Defendant Bennett concedes that Plaintiff filed two grievances that address her conduct – namely, Grievance No. 80-1-23 and Grievance No. 160-2-23. (Doc. 38, p. 9). However, Defendant argues that Plaintiff failed to exhaust his administrative remedies as to those grievances. *Id.* In response, Plaintiff insists that he would not file a lawsuit prior to completing the grievance procedures as described in the Illinois Administrative Code. (Doc. 44, p. 6-7). Specifically, Plaintiff believes that he properly exhausted Grievance No. 80-1-23 when he submitted it to the ARB before he filed the present lawsuit. *Id.* at p. 8. Plaintiff also alleges that the ARB record for Grievance No. 160-2-23 was removed once it was received by the ARB. (Doc. 44, p. 9-10). Even if that were the case, Plaintiff still would have failed to exhaust his administrative remedies for either grievance because the lawsuit was filed prematurely before either grievance was or could have been exhausted.

The PLRA provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all administrative remedies. *See* 42 U.S.C. § 1997e(a); *Pavey,* 544 F.3d at 740; *See also Woodford,* 548 U.S. at 88, 93 (holding that "complet[ing] the administrative review process" is "a precondition to [a prisoner] bringing suit in federal court."). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo,* 286 F.3d at

1024. Moreover, "exhaustion must precede litigation." *Ford*, 362 F.3d at 398. Federal courts strictly enforce this requirement. *See Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Accordingly, if the prisoner files his lawsuit before his administrative remedies are fully exhausted, the lawsuit must be dismissed, even if the prisoner anticipates the grievance will soon be exhausted or will become exhausted during the pendency of the lawsuit. *See Hernandez*, 814 F.3d at 841-842; *Ford*, 362 F.3d at 398.

Grievance No. 80-1-23 was received by the ARB on February 26, 2023, and it was denied on March 16, 2023. (Doc. 38, Exh. 1, p. 1.). While it is true that the ARB received Plaintiff's grievance before the present lawsuit was filed on February 28, 2023, the ARB did not make a final determination on the grievance until March 16, 2023. (Doc. 1); (Doc. 38, Exh. 1, p. 1). Because a *decision* by the ARB represents the final step in the grievance process, Plaintiff did not exhaust Grievance No. 80-1-23 until March 16, 2023. *See, e.g.*, *Flournoy v. Brookhart*, Case No. 3:22-cv-00049, 2024 WL 896278, at * 6 (S.D. Ill. Mar. 1, 2024) (finding that a plaintiff "jumped the gun" by filing a lawsuit before the ARB announced its decision on his grievance appeal). Thus, Plaintiff prematurely filed suit for his claims addressed in Grievance No. 80-1-23.

Regarding Grievance No. 160-2-23, Plaintiff contends that he did submit the grievance to the ARB after receiving a response from the CAO denying the grievance on March 10, 2023. (Doc. 44, p. 8). He further asserts that the ARB threw away his grievance once it was received. *Id.* at p. 10. The grievance record supplied by Defendants only shows that Grievance No. 160-2-23 proceeded through the second level – ending with the denial by the CAO. (Doc. 38, Exh. 2, p. 17). Even taking Plaintiff's allegations as true, Plaintiff

still would have failed to exhaust Grievance No. 160-2-23, because like Grievance No. 80-1-23, the Grievance would not have had the time to proceed through the final agency determination before February 28, 2023. In fact, the grievance was drafted on February 23, 2023, just five days prior to Plaintiff filing the present lawsuit. (Doc. 38, Exh. 2, p. 18). It would be impossible for Plaintiff to have exhausted the grievance in such a short period of time. Accordingly, Plaintiff also failed to exhaust his administrative remedies for Grievance No. 160-2-23.

Although not addressed by Plaintiff in his response or at the hearing, the Court also finds that Grievance No. 84-1-23 did not grieve conduct attributable to Defendant Bennet. According to IDOC Grievance Procedure, "the grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). When the names of individuals are not known, "the offender must include as much descriptive information about the individual as possible." *Id.*

In the Summary of Grievance portion of Grievance No. 84-1-23, Plaintiff begins by stating that he is "filing another grievance on the LPN of healthcare" and notes that he "does not call [LPN's] nurses because they are not nurses." (Doc. 38, Exh. 2, p. 1-2). These statements show that Plaintiff has a clear understanding of the differences between LPNs and nurses at Big Muddy River. Plaintiff goes on to state that it is the LPNs who are failing to follow Dr. Larson's orders regarding care for his leg. *Id.* Plaintiff concludes the Summary of Grievance by stating that he planned to use the grievance "against LPN

Jennifer." *Id.* at p. 2. Plaintiff also specifically names two other LPNs in the grievance. Additionally, the relief Plaintiff specifically requested in response to his grievance was for "LPNs to follow Dr. Larson's medical order." *Id.* at p. 1. Nowhere in the grievance does Plaintiff allege that Defendant Nurse Bennett, or any nurse at the facility failed to comply with Dr. Larson's orders.[4] The grievance is limited to critiquing the conduct of the LPNs at Big Muddy River.

These facts are like those in *Taylor Walls v. Johnson*, Case No. 16-CV-18-NJR-DGW, 2017 WL 603838, at *3 (S.D. Ill. Feb. 15, 2017). In *Taylor Walls*, the Court found that a plaintiff's failure to identify an unknown named individual by the correct title prevented the plaintiff from exhausting his administrative remedies against that individual defendant. *Id.* Specifically, the plaintiff in *Taylor Walls* identified the defendant in the grievance at issue as the warden as opposed to the assistant warden. *Id.* Complicating matters further, there were three wardens at plaintiff's facility. *Id.* Despite the plaintiff being aware of these circumstances, he failed to provide any other identifying details about the assistant warden defendant. *Id.* Thus, the Court held that the plaintiff's "vague sentence" with "an incorrect title", compounded by the clear evidence in the record that plaintiff knew the name and title of the defendant before filing the grievance, resulted in plaintiff failing to exhaust against the defendant. *Id.*

In this case, Plaintiff was aware that LPNs and nurses have different titles at Big

---

[4] The Court acknowledges that Grievance No. 84-1-23 does state that "Dr. Larson ordered that [Plaintiff's] left leg be wrap[ped] and [his] compressing sock be put on everyday by a nurse." (Doc. 38, Exh. 2, p. 2).

Muddy River. Had Plaintiff wanted to grieve the conduct of a nurse in Grievance No. 84-1-23, like Defendant Bennett, he could have, and should have made that distinction given his knowledge of the medical staff. However, Plaintiff did not name a nurse in the grievance, and the conduct he complains about is only attributed to LPNs at Big Muddy River. In fact, Plaintiff specifically stated he wished to use the grievance against LPN Jennifer. He also named two other LPNs, but he did not name Nurse Bennett. Accordingly, the Court likewise finds that Plaintiff failed to exhaust Grievance No. 84-1-23 as it could not be read to encompass any conduct by Nurse Bennett.

## CONCLUSION

For the reasons delineated above, Defendant's Motion for Summary Judgment is **GRANTED**. (Doc. 37). The Clerk of Court is directed to enter judgment in favor of Defendant Bennett at the conclusion of the case.

**IT IS SO ORDERED.**

**DATED: September 10, 2024.**

Digitally signed by Judge Sison
Date: 2024.09.10 13:51:21 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**